## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAQUAN CORBETT | No. 1:22-cr-00023-SDN |

## GOVERNMENT'S MEMORANDUM REGARDING A VARIANT SENTENCE
## Introduction

The Government, by and through its attorneys, Craig M. Wolff, Acting United States Attorney for the District of Maine, and Joel B. Casey, Assistant United States Attorney, submits this memorandum regarding the imposition of a variant sentence.

The defendant's guideline range of imprisonment is life. The defendant asks the Court to impose a variant sentence of ten years. The Government does not object to the Court imposing a variant sentence. As discussed below, and as will be addressed at the sentencing hearing, the Court should impose a sentence of 360 months imprisonment.

## Discussion

The Government assumes the Court's familiarity with the well-established standards that it must apply in considering the relevant sentencing factors under 18 U.S.C. § 3553(a) and imposing a just and fair sentence.

1. **The nature and circumstances of the offense and the history and characteristics of the defendant.**

The Court presided over a two weeklong trial, has sentenced several co-defendants, and has reviewed the thorough pre-sentence report (PSR) in this case. The Court understands the nature and circumstances of the offense and the defendant's participation in it. The Government will reserve comment as to this factor until the sentencing hearing; suffice it to say that the conspiracy the defendant participated in distributed dozens of kilograms of methamphetamine and fentanyl in Maine.

Corbett was 24 years old when he began committing the offense. He grew up in Massachusetts. He has a close relationship with his mother who raised him while his father was serving a sentence for murder. Corbett denies a relationship with his father, whereas his mother told the PSR author that Corbett and his father are close, and his father has always been in his life, despite incarceration.

Corbett was raised in a home free of abuse and neglect. He reports that he grew up with "perfect love." On the other hand, Corbett reports that his mother would beat him as a teenager if he misbehaved and kicked him out of the house on multiple occasions. At age 13, the state of Massachusetts became involved in his welfare. The PSR author was unable to obtain any confirmation of this or documentation concerning the extent of his involvement with state authorities.

He has no history of substance use disorder, although he is a social drinker and a regular user of marijuana. He began using both at age 14. He was kicked out of school at a young age and earned his GED later. He has no verifiable legitimate work history.

His criminal history is category III and his adult criminal history is as follows:

| (Age 17) | Poss. Of firearm | 2.5 years incarceration | 2012 |
| (Age 19) | PWID | 1 year incarceration | 2015 |

Corbett also has an extensive juvenile history, which was not counted for criminal history calculation purposes, including cases involving weapons, drugs and violence.

He has a pending case in Massachusetts in which he is charged with firearm and drug offenses stemming from a March 12, 2021 stop by the Brockton, Massachusetts Police Department. A loaded firearm, cocaine and marijuana were found in his vehicle. The commonwealth prosecutor advises that Corbett has agreed to plead to the charge and get a concurrent sentence following imposition of sentence in this case.

The instant prosecution is not Corbett's first experience with the criminal justice

system. Since age 14 he has had repeated arrests and increasing degrees of punishment.

In his PSR Corbett reports he did not have a male role model in his life because his

father was in prison and, as such, he had to learn on his own "how to be a man." This

attempt at self-education likely contributed to his repeated run ins with the law, his lack

of legitimate employment, his suspension from school, his commission of the instant

offense, and his failure to accept responsibility for it.[1]

The Government has considered this sad history in recommending a sentence

other than life imprisonment.

2. **The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

A sentence of imprisonment of 30 years reflects the seriousness of the offense,

promotes respect for the law and provides just punishment for the defendant. As the

Court is aware, the size and scope of the conspiracy that the defendant played a central

role in is unprecedented in the District of Maine. Dozens of kilograms of

methamphetamine and fentanyl that the defendant participated in distributing

throughout Penobscot and Aroostook Counties has destroyed lives and families. The

impact of the defendant's conduct will continue to be felt for years.

A sentence of 30 years imprisonment will deter the defendant from re-offending.

---

[1] His failure to accept responsibility for his crime is consistent with his persistence in staying involved in drug dealing, despite numerous close calls that would reasonably cause a less committed criminal to get out, lest they be arrested. The arrest of Tamara Davis and seizure of two kilograms of methamphetamine she was delivering to Jackson, the seizure of cash from Jackson by the New Hampshire State Police, the seizure of cash from he and Jackson by the Maine State Police, his arrest with a loaded handgun and drugs in Brockton, the arrests of Danielle McBreairty, Andrew Adams, Matt Catalano, Thomas Hammond and other conspirators were among the events that should have served as a sobering warning and caused him stop and get out. His persistence in committing this crime is in keeping with his steadfast refusal to acknowledge the wrongfulness of his conduct and speaks to his character.

Such a sentence will also offer a justified measure of general deterrence to people who may seek to profit off the misery of others.

A 30-year sentence will also protect the public from future crimes by the defendant. An examination of his criminal history indicates that this offense is far more serious than the crimes he has previously committed. His criminal conduct is getting more egregious, not less so. This is concerning and ought to concern the Court in considering how to protect the public from future crimes of the defendant. Nonetheless, the Government suggests that a sentence of 30 years, given everything that is involved will provide adequate protection to the public from future crimes by the defendant.

If he were inclined to better himself, a 30-year sentence would provide the defendant with sufficient time to obtain educational, vocational and correctional training at the Bureau of Prisons. It is unclear, however, that the defendant is interested in such opportunities. Unlike countless other defendants, including many of his co-defendants, there is no indication that Corbett has engaged in any educational, vocational or other training while held at any of the facilities where he has been detained since his arrest or is interested in doing so.[2] The Government asked counsel for any certificates or other evidence of such training and received none. The Government checked with each of the facilities where the defendant was held and was told he engaged in no such programming. The PSR contains no reference to the defendant engaging in any such training. Given the complete lack of evidence that the defendant is interested in pursuing such opportunities, this sentencing factor marginally relevant.

### 3. The kinds of sentences available.

The kinds of sentences available are imprisonment followed by a term of

---

[2] For example, Jackson, whom the Court sentenced to 20 years imprisonment, provided the Government and the Court with evidence of his participation in nearly three dozen different courses while detained.

supervised release, and a fine. The Government is not seeking a fine. The case is not

eligible for probation. None of the other sentencing options are appropriate.

4. **The kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines**

As reflected in the PSR, the sentencing guideline range is life imprisonment.

5. **Any pertinent policy statement**

There are no policy statements in Chapter 5 of the guidelines that are sufficiently

pertinent so as to justify a sentence less than 30 years imprisonment.

6. **The need to avoid unwarranted sentence disparities.**

As the Court is aware, the need to avoid unwarranted sentencing disparities is

based upon consideration of a national standard, not a case specific standard. *See, e.g.,*

*United States v. Marceau*, 554 F.3d 24, 33-34 (1st Cir. 2009). Here, the advisory

guideline range of life reflects the national standard for the sentencing of other

defendants convicted of the same crime and with the same criminal history as Corbett.

*See United States v. Rivera-Gonzalez*, 626 F.3d 639, 648 (1st Cir. 2010) (a sentence

within the guideline range "is likely to reflect the national standard") (*quoting United*

*States v. Muffelman*, 470 F.3d 33, 40-41 (1st Cir. 2006)).[3]

Nonetheless, the Court is free to consider sentences imposed on co-defendants in

applying the standard. "Unless two 'identically situated defendants' receive different

sentences from the same judge, which may be a reason for concern, our general rule of

thumb is that a 'defendant is not entitled to a lighter sentence merely because his co-

defendants received lighter sentences.'" *United States v. Rivera–Gonzalez*, 626 F.3d

639, 648 (1st Cir. 2010) (*quoting United States v. Wallace*, 573 F.3d 82, 97 (1st Cir.

2009)). Thus, to make a convincing disparity argument, the defendant must compare

---

[3] According to the United States Sentencing Commission's most recently available data for 2020-2024 eleven drug (non-5K1.1) defendants with AOL 43 and CHC III have been sentenced nationwide. The average length of sentence was 315 months, and median sentence was 300 months. See https://jsin.ussc.gov/analytics/saw.dll?Dashboard

"apples to apples" and point to something other than the fact that he and his co-defendants were convicted of the same crime and what sentence they received. *See United States v. González-Barbosa*, 920 F.3d 125, 131 (1st Cir. 2019). *See also United States v. Rosario Sanchez*, 143 F.4th 41, 48-49 (1st Cir. July 3, 2025). There are no sentenced co-defendants in this case, or in any of the other cases cited by the defendant that are similarly situated to him. The defendant offers no facts upon which he can make a compelling "apples to apples" comparison. Nor can he.

The evidence at trial demonstrated that Corbett was more culpable than his co-defendants and co-conspirators. He was involved in the recruiting of accomplices, directing the activities of others, collecting drug proceeds, and acquiring firearms for the conspiracy. In addition (with two exceptions) none of his sentenced co-defendants engaged in the offense as part of a criminal livelihood or received a firearms enhancement, like Corbett.[4] His case is different from these defendants. His punishment should reflect his culpability.

Further, many of Corbett's co-defendants cooperated and received motions for downward departure under U.S.S.G. §5K1.1. A defendant should receive a lower sentence because those who were willing to assume the risks of cooperation and testify against him received lower sentences.

Finally, all previously sentenced defendants pled guilty and accepted responsibility for the same crime that, following a two-week long resource intensive trial, Corbett has been convicted of committing. "'The defendant who opts to go to trial rather than negotiating a plea runs the risk of a harsher sentence than he would have received by pleading guilty.'" *United States v. Torres Santiago,* 729 F.2d 38, 41 (1st Cir. 1984). *See also Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Corbett's decision to go to trial, distinguishes his case from his co-defendants.

---

[4] One exception is a co-defendant who pled guilty, accepted responsibility, testified at trial, and received a motion for downward departure under U.S.S.G. §5K1.1. It strains logic to suggest that the sentence this person received is an apt comparison. The second is defendant Jackson – a more apt comparison.

The defendant's discussion of the sentences imposed on three cartel level dealers misses the mark. The Court knows nothing of those cases, other than what is reported in the press. According to the press sources cited by the defendant, and others, each of the three defendants pled guilty and accepted responsibility for their crimes. Unlike Corbett, none of the three maintained their innocence and took their case to trial. The Court cannot know whether they cooperated or received 5K1.1 motions. Absent more information, the defendant is asking the Court to compare apples to oranges.

Juxtaposing those cases to his, to characterize himself as "low hanging fruit," also misses the mark. The evidence at trial established that the defendant was not "low hanging fruit" – that is, a thing easily obtained. The defendant was adept at eluding detection of law enforcement and persisted in selling drugs in our communities for years. The Government is not suggesting that he is on par with cartel members – but it is simply not the case that he was "low hanging fruit." He presented a significant public safety issue in our communities – small communities with comparatively fewer law enforcement and treatment resources - and his conduct hurt untold numbers of people.

Corbett should not receive a lower sentence simply because others have.[5]

## Conclusion

The Government has no objection to the Court imposing a variant sentence. A sentence of 30 years imprisonment is just and fair. The Government intends to further address the 3553(a) factors at sentencing.

Date: October 17, 2025

Respectfully submitted,
Craig M. Wolff
Acting United States Attorney

/s/Joel B. Casey
Supervisory Assistant U.S. Attorney
United States Attorney's Office
202 Harlow Street
Bangor, ME 04401

---

[5] The requirement of 18 U.S.C. § 3553(a)(7) regarding restitution is not implicated here.

CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2025, I filed the Government's Memorandum Regarding a Variant Sentence using the CM/ECF system, which will cause a copy to be sent to the following counsel:

Joseph Krowski, Esq.
Peter Rodway, Esq.
Counsel for Defendant

/s/Joel B. Casey
Supervisory Assistant U.S. Attorney
United States Attorney's Office
202 Harlow Street
Bangor, Maine 04401